RECEIVED

SEP 1 5 2014

AT 8:30_____M
WILLIAM T. WALSH, CLERK

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| INSERRA SUPERMARKETS, INC., | Civil Case Number:3-14-cv-03919-FLW |
| | |
| Appellant, | ON APPEAL FROM |
| | |
| v. | United States Bankruptcy Court for the |
| | District of New Jersey |
| | Case No. 06-20937 (MBK) |
| RUSSO, et all., | Decision on: May 27, 2014 |
| | Order entered: May 29, 2014 |
| Appellees. | |

---

APPELLEE IRFAN SHAH'S  BRIEF IN OPPOSITION TO INSERRA SUPERMARKETS, INC.'S APPEAL FROM ORDER GRANTING DEBTOR'S MOTION TO REOPEN BANKRUPTCY CASE

---

**RAYMOND AND RAYMOND, ESQ'S.**
Kevin de Lyon, Esq
7 Glenwood Ave, St. 408
East Orange, NJ 07017
(973)-675-5622
(408-519-6711 (Fax)

Attorneys for Appellee
Irfan Shah

Kevin de Lyon, Esq.
On the Brief:

## TABLE OF CONTENTS

**PAGE #**

Table of Authorities.................................................................................iv

Statement of the Issues Presented.............................................................1

Preliminary Statement..............................................................................1

Standard of Review...................................................................................2

Statement of the Case and Background Facts............................................3

Argument..................................................................................................5

I.    The Bankruptcy Court acted within its jurisdiction by concluding
      that the Debtor was not judicially estopped from pursuing a claim
      pending in state court and properly  considered the debtor's good
      faith when deciding to reopen the debtor's Bankruptcy Case......................5

      A.    The bankruptcy court had jurisdiction to decide that the
            debtor was not  judicially estopped from pursuing claims
            pending in New Jersey Superior Court...........................................6

      B.    The bankruptcy court was well within its authority by ruling
            on the good faith  of  the debtor with regards to the reopening
            of the case....................................................................................8

II.   The bankruptcy court did not abuse its discretion in reopening the
      debtor's case as  1329(c) and 1329(a) are not the sole methods by
      which payments through a Chapter 13 trustee to creditors can be
      effectuated in a reopened Chapter 13 case...........................................10

      A.    The time limits of 1329(c) do not apply to a distribution of
            assets pursuant to 350(b)............................................................11

      B.    The fact that plan payments are completed does not prohibit
            administration of  assets pursuant to 350(b)................................17

      C.    The trustee is allowed to administer assets pursuant to 350(b),
            105(a), and 5010 and therefore the inability to modify the plan
            payments does not prohibit reopening..........................................19

ii

**III.    Inserra lacked standing to object to the debtor's Motion to Reopen His Chapter 13 Case.**......................................................................................................21

Conclusion.................................................................................................................................22

# TABLE OF AUTHORITIES

**PAGE #**

**CASES**

In Re D'Antignac, 05-10620 (Bankr. Ct. SD Georgia 2013)............................................21

In Re Arana, 456 B.R. 161 (Bankr. E.D.N.Y. 2011)........................................9, 12, 15

In Re Barger, 279 B.R. 900  (Bankr. N.D. Ga. 2002) ......................................................7

Barger v. City of Cartersville, 348 F. 3d. 1289 (11th Cir. 2003)......................................7

Burnes v. Pemco Aeroplex, Inc, 291 f. 3d 1282 (11th Cir 2002)....................................7,8

Calminetti v. United States, 242 U.S. 470 (1917)..........................................................12

In Re Carter, 258 B.R. 526 (Bank S.D. Ga, 2001)........................................................4,7

Cataldo v. Moses, 361 F. Supp 2d. 420 (D.N.J. 2004)....................................................3

De Leon v. Comcar Industries, Inc, 321 F. 3d. 1289 (11th Cir. 2002).............................7

Escondido Mut. Water Co., v. La Jolla Band of Mission Indians, 466 U.S. 765(1984)...............12

In Re Farley, 451 B.R. 235  (Bankr E.D.N.Y. 2011) ................................................7, 9

In Re Farmer, 324 B.R. 918  (Bankr. M.D. Ga. 2005)....................................................7

In Re Fleming, 424 B.R. 795  (Bank. W.D. Mich , 2010)...............................................19

In Re Geron, 225 B.R. 41 (S.D.N.Y.  1998)...................................................................6

In Re Haskett, 297 B.R. 637  (Bankr. N.D. Ala.  2003) ..................................................7

HomeEq Serv. Corp. V. Hauf, 2007 WL 196857  (M.D. Ga. Jan 23, 2007)...................16

iv

In Re Huggins, 305 B.R. 63 (Bankr. .N.D. Ala. 2004) ....................................................6

In Re Income Property Builders, Inc, 699 F. 2d. 963 (9th Cir. 1982)............................................18

Immigration and Naturalization Serv v. Phinpathya, 454 U.S. 183 (1984)...................................12

In Re James,, 487 B.R. 587 (Bankr. N.D. Ga. 2013) ...............................................................7, 17

In Re King, 214 B.R. 334 (Bankr. W.D. Tenn. 1997)....................................................................18

In Re Koch, 229 BR. 78  (Bankr. E.D.N.Y. 1999)..........................................................................9

In Re Knox, 237 B.R. 687  (Bankr. S.D.N.Y. 1998)........................................................................6

In Re Lewis, 273 B.R. 739 (Bankr. N.D. Ga. 2001)......................................................................14

In Re LFS Financial, 417 B.R. 419  (Bankr. S.D. Tex., 2009)......................................................19

In Re Lopez, 283 B.R. 22 (9TH Cir. B.A.P. 2002)..................................................................14, 16

In Re Lowery, 398 B.R. 512 (Bankr. E.D.N.Y. 2008).....................................................................9

In Re Maloy, 195 B.R. 517  (Bankr. M.D. Ga.. 1996)......................................................................9

In Re McMellon, 448 B.R. 887 (S.D. W. Va. 2011)........................................................................9

In Re Narcisse, Case No. 96-21345 (Bankr. E.D.N.Y. 2013)...........................................................9

In Re Phillips, No. 09-28759, 2012 WL 1232008 (Bankr. D.N.J. Apr. 12, 2002)............10, 13, 21

In re Riazuddin, 363 B.R. 177, 182-183 (10th Cir. B.A.P 2007).....................................................21

Richards v. Johnson & Johnson, Inc., 2008 WL 544663 (D.N.J. Feb. 26, 2008)............................3

In Re Rochester, 308 B.R. 596  (Bankr. N.D. Ga.. 2004) ................................................................7

In Re Roman, 257 Ga. App. 774, 572 S.E. 2d 338 (Ga. App. 2002).............................................18

In Re Ross, 278 B.R. 269  (Bankr. M.D. Ga, 2001)........................................................................4

In Re Tarrer, 273 B.R. 724, 734.  (Bankr. N.D. 2002)...............................................................9, 16

Toth v. Alice Pearl, Inc., 158 F.R.D. 47  (D.N.J. 1994)..................................................................3

v

In Re Upshur, 317 B.R. 446  (Bankr. N.D. Ga. 2004)....................................................................14

In Re Walker, 323 B.R. 188  (Bankr. S.D. Tex. 2005) .....................................................................7

Weiss v. First Unum Life Ins. Co. 2008 WL 5188857  (D.N.J. Dec 10, 2008)...............................3

In Re Zinchiak, 405 F. 3d 214 (3rd Cir. 2005)..................................................................................3

## STATUTES

11 U.S.C. 105...................................................................................................................19, 20, 23

11 U.S.C. 350(b)......................................................................................................................passim

11 U.S.C. 1306(a)(1)................................................................................................................4,15

11 U.S.C. 1325(d)(5)(C)..............................................................................................................13

11 U.S.C. 1327(b)....................................................................................................................4,15

11 U.S.C. 1325(b)(4).....................................................................................................................4

11 U.S.C. 1326(c)........................................................................................................................20

11 U.S.C. 1329(c).................................................................................................................passim

11 U.S.C. 1329(a).................................................................................................................passim

## RULES

Fed. R. Bankr. P. 7052...................................................................................................................6

Fed. R. Bankr. P. 5010..........................................................................................................passim

## TREATISES

2 L. King, Collier on Bankruptcy 105.01 at 105(3) 1996..............................................................19

2 Williams M. Collier, Collier on Bankruptcy 105.01(3) (Lawrence P. King Ed. 1991)..............19

3 Collier on Bankruptcy 350.03[1] at 350-7 (Alan N. Resnick & Henry J. Sommer eds., 16th ed 2010)...............................................................................................................................14

Kevin Casey; Jada Cammara; Nancy Wright. Standards of Appellate Review in the Federal Circuit: Substances and Semantics. 11 Fed. Cir. B.J. 279-2001-2009.............................................3

Evan J. Zucker. The Applicable Commitment Period: A Debtor's Commitment To A Fixed Length Plan. ABI Law Review, Vol. 15: 287. 2007........................................................................13

William N. Eskridge, Jr.; Philip P. Frickey; Elizabeth Garrett, Cases and Materials on Legislation: Statutes and the Creation of Public Policy (3rd ed. 2001)...........................................18

## STATEMENT OF THE ISSUES PRESENTED

1.    Whether the Bankruptcy Court erred in making a judicial determination as to whether

Debtor was judicially estopped from pursuing a claim in the New Jersey Superior Court.

2.    Whether the Bankruptcy Court erred in allowing the Chapter 13 Bankruptcy Case to be

reopened 82 months after the Bankruptcy Court Order Confirming the Chapter 13

Bankruptcy Plan and after the Debtor had completed payments under the plan.

3.    Whether the Bankruptcy Court erred in allowing State Court Defendant Inserra

Supermarkets. Inc's objection to the reopening of the Debtor's Chapter 13 Bankruptcy

Case.

## PRELIMINARY STATEMENT

On May 20, 2014, the bankruptcy court heard oral argument on Debtor-Appellee Irfan

Shah's ("Debtor") Motion to Reopen his chapter 13 case. On May 27, 2014 the court entered the

debtor's order  reopening the Chapter 13 case for the purpose of administering his personal injury

action once it settles with Appellant  Inserra Supermarket, Inc ("Inserra'). In addition, the court's

order declared the debtor to not be judicially estopped from pursuing his state court action

against Inserra and furthermore that the debtor did not act in bad faith by failing to disclose his

personal injury claim to the bankruptcy court sooner.  The bankruptcy court acted well within its

broad equitable discretion and wholly consistent with the law in rendering such an order.

The debtor submits this memorandum of law in opposition to Inserra's appeal of the

above order. Inserra'a appeal should be denied as Inserra has failed to demonstrate that the

bankruptcy court's order was clearly erroneous, contrary to law, or an abuse of discretion.  To the

contrary, the bankruptcy court order was well reasoned, comprehensive, and in accordance with

1

relevant case law and facts, and overall effectuates the purpose of the bankruptcy code.

While the debtor's motion originally only sought to reopen the case for the purpose of amending his bankruptcy schedules to include the cause of action with Inserra and ultimately administration of the asset, Inserra's opposition brought the issues of good faith and judicial estoppel before the court. The court, within its authority and jurisdiction, deemed it appropriate to address these issues in the order. The bankruptcy court had broad authority to take into consideration all relevant facts and circumstances when considering to reopen a case and thus made the appropriate findings.

In addition, the court was well within its authority to reopen the case notwithstanding the length of time since the case originally closed. The court has a duty to reopen cases to administer assets when in the best interest of creditors and this basis is explicitly authorized under the plain language of the law. The reopening of the debtor's case is not a plan modification and therefore the time constraints for modified the plan are irrelevant. Rather, there will be a distribution of assets pursuant to the court order reopening the case under terms to be decided once the personal injury claim settles.

As the bankruptcy court acted under its authority of the plain language of the law in reopening the case to administer assets, and made the appropriate factual determinations, specifically in response to Inserra's opposition, the bankruptcy court did not abuse its discretion and the bankruptcy order reopening the case should be sustained.

## STANDARD OF REVIEW

An extremely deferential standard applies to the review of the bankruptcy court's order.

2

Motions to reopen are reviewed under an abuse of direction standard. In Re Zinchiak, 405 F. 3d 214, 222 (3rd Cir. 2005). A ruling is an abuse of discretion when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable person would take the view adopted by the bankruptcy court. If reasonable people would take the view adopted by the bankruptcy court, then it cannot be said that the bankruptcy court abused its discretion. Richards v. Johnson & Johnson, Inc., 2008 WL 544663 at *2 (D.N.J. Feb. 26, 2008). The discretion to reopen is extremely broad and should not be rejected even if the reviewing court could have decided the issues differently. Toth v. Alice Pearl, Inc., 158 F.R.D. 47, 53 (D.N.J. 1994). To be contrary to law, a judge's order must have misinterpreted or misapplied applicable law. Cataldo v. Moses, 361 F. Supp 2d. 420, 424 (D.N.J. 2004). Particularly applicable here, an order is not clearly erroneous or contrary to law when there is no controlling precedent. Weiss v. First Unum Life Ins. Co. 2008 WL 5188857 at *3 (D.N.J. Dec 10, 2008). Abuse of discretion is the most lenient standard of review in which the reviewing court merely acts under a trial supervisory role to see if there was a rational basis for the lower court's decision and gives the greatest deference possible to the trial tribunal. Kevin Casey; Jada Cammara; Nancy Wright. Standards of Appellate Review in the Federal Circuit: Substances and Semantics. 11 Fed. Cir. B.J. 279-2001-2009.

## STATEMENT OF THE CASE AND BACKGROUND FACTS

Debtor's Chapter 13 bankruptcy case was filed on November 5, 2006. Included within the voluntary petition was the schedules and statement of financial affairs, which was signed under the penalty of perjury. All information contained in the petition was completely accurate at the time of filing.

3

Debtor's chapter 13 plan was confirmed on July 23, 2007 and provided for payments of $100 per month for fifty-three months with a pro rata distribution to unsecured creditors. It should be noted that the debtor was a below median income earner and only needed to make plan payments for thirty-six months pursuant to 1325(b)(4) of the Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA"). Nevertheless, the debtor voluntarily elected a fifty-three month payment term and agreed to effectuate a larger repayment to creditors than necessary under the law.

In February 2010, at a point where the debtor's case would have likely been closed had he elected the minimum thirty-six month repayment, the debtor suffered an injury due to the negligence of Inserra. In March 2010 he retained counsel to bring such negligence action in the state court. Shortly after, in July 2010, the debtor tendered his final payment under the terms of his Chapter 13 plan.

Due to the debtor's election to effectuate a longer repayment plan than necessary, the incurring of the instant cause of action arguably[1] became property of the bankruptcy estate. Nonetheless, no controlling case law requires, nor statues, nor local rules provide for the disclosure of post-petition causes of action in confirmed Chapter 13 bankruptcies. Under no established duty to disclose, no disclosure was in fact made to the bankruptcy court of the cause

---

[1] It is unclear whether the negligence claim of the debtor is, in fact, property of the bankruptcy estate. While 1306(a)(1) provides that the bankruptcy estate in a Chapter 13 includes all property acquired since the commencement of the case, a seemingly contradictory provision in 1327(b) provides that confirmation vests all property of the estate in the debtor. Courts have struggled to resolve this discrepancy and indeed, some courts have held in analogous cases that any debate as to judicial estoppel is mooted in favor of the debtor as such post-petition causes of action are not bankruptcy estate property and therefore not subject to any disclosure by the debtor. See In Re Carter, 258 B.R. 526 (Bank S.D. Ga, 2001). See also In Re Ross, 278 B.R. 269 (Bankr. M.D. Ga, 2001).

4

of action.

In October 2011, the debtor filed his lawsuit in the Superior Court of New Jersey seeking to recover the damages he incurred due to Inserra's negligence. Inserra responded with the summary judgment motion based on judicial estoppel for not disclosing the cause of action. Despite no established or controlling duty to disclose, the debtor was nonetheless faced with the prospects of a negative ruling in a summary judgment motion by Inserra in state court. He felt the more prudent course of action would be to reopen the bankruptcy case, consider it estate property, and to disclose the asset thereby making it available to creditors for distribution.

While the debtor's original motion to reopen alluded to the state court action, it nonetheless sought no relief or ruling beyond just the administrative act of reopening the case, at which point additional funds were to be paid into the estate upon settlement of the cause of action. However, Inserra subsequently objected and in a supplemental objection specifically raised a de facto judicial estoppel argument regarding the good faith or lack thereof of the debtor in allegedly raising inconsistent positions. See Docket entry 55 in Case No. 06-20937. Based on these arguments presented by Inserra, the court made the appropriate considerations and determinations of all issues raised and entered the order accordingly.

## ARGUMENT

**I.   The Bankruptcy Court acted within its jurisdiction by concluding that the Debtor was not judicially estopped from pursuing a claim pending in state court and properly considered the debtor's good faith when deciding to reopen the debtor's Bankruptcy case.**

The bankruptcy court may exercise subject matter jurisdiction over core claims that "arise

5

under" or "arise in" a bankruptcy case. A bankruptcy court will also have the subject matter jurisdiction over those non-core proceedings that "relate to" a bankruptcy case. In Re Geron, 225 B.R. 41, 45 (S.D.N.Y. 1998). A civil claim is related to a bankruptcy case for jurisdictional purposes when the action between the parties affects how much property is available for distribution to creditors of the bankruptcy estate. In Re Knox, 237 B.R. 687, 693 (Bankr. S.D.N.Y. 1998). As such, the bankruptcy court would have had jurisdiction to hear the personal injury claim in the bankruptcy court as the outcome definitely has an effect on assets available to be paid to creditors.  In addition, the court is authorized by Federal Rule of Bankruptcy Procedure 7052 to make findings of facts and conclusions. Accordingly, it also has the appropriate authority to make findings of facts and issue a ruling accordingly with regard to the issues that pertain to the bankruptcy.

## A. The bankruptcy court had jurisdiction to decide that the debtor was not judicially estopped from pursuing claims pending in New Jersey Superior Court.

As the bankruptcy case has been opened for the sole purpose of administering the personal injury claim, the outcome of the state court litigation undeniably has an effect on the extent of assets available for distribution to creditors. Accordingly, the court had the authority to render applicable decisions in corollary matters such as the motion to reopen the case. While the court may not have been required to render such a decision, it certainly was within its discretion to do so. In fact, Bankruptcy courts do this with regularity in motions to reopen with factually analogous scenarios and some courts even presume that the court must first determine whether the debtor is judicially estopped from pursuing the cause of action before reopening a bankruptcy case. See In Re Huggins, 305 B.R. 63, 66 (Bankr. .N.D. Ala. 2004) ("The court hereby finds

6

that the debtor is judicially estopped..."); In Re Rochester, 308 B.R. 596, 604 (Bankr. N.D. Ga..

2004) ("At least two bankruptcy courts have presumed that under *Burnes*, *De Leon*, and *Barger*,

before reopening a bankruptcy case, the court should first determine whether the debtor is

judicially estopped from pursuing the cause of action.")[2]; In Re Carter, 258 B.R. 526, 528,

(Bankr. S.D. Ga. 2001) ("Judicial estoppel in inapplicable because..."); In Re Farmer, 324 B.R.

918, 923 (Bankr. M.D. Ga. 2005) ("The court finds that judicial estoppel is not applicable..."); In

Re Barger, 279 B.R. 900, 901-902 (Bankr. N.D. Ga. 2002) ("...because the city has presented the

question [of judicial estoppel] in opposition to the motion to reopen, it is appropriate to address

it."); In Re Walker, 323 B.R. 188, 198  (Bankr. S.D. Tex. 2005) ("The court finds credibility in

this rationale for invoking judicial estoppel...."); In Re Haskett, 297 B.R. 637, 643  (Bankr. N.D.

Ala.  2003) ("...the facts of a particular case should guide the court in determining whether to

apply judicial estoppel to other undisclosed claims for non-monetary relief."); In Re James., 487

B.R. 587 (Bankr. N.D. Ga. 2013)  ("Therefore, judicial estoppel is inapplicable to prevent

reopening this bankruptcy case.")

    As the court can see, it is common practice and wholly within the discretion of

bankruptcy courts to make such determinations  before reopening a case.  It is within their

jurisdictional limits and such findings of fact also serve a valid purpose of not wasting judicial

resources  in the event a case is reopened to administer an asset, only to have the cause of action

dismissed on grounds of judicial estoppel. See In Re Farley, 451 B.R. 235, 237  (Bankr E.D.N.Y.

---

    [2] The court here is referencing three decisions in the 11th Circuit dealing with judicial estoppel in the context of undisclosed causes of action in bankruptcy cases. See Barger v. City of Cartersville, 348 F. 3d. 1289 (11th Cir. 2003); De Leon v. Comcar Industries, Inc, 321 F. 3d. 1289 (11th Cir. 2002); Burnes v. Pemco Aeroplex, Inc, 291 f. 3d 1282, 1284 (11th Cir 2002).

7

2011) ("The court will only exercise its discretion to reopen a case in circumstances where relief may ultimately be afforded to a party, but not where reopening is futile or a waste of judicial resources.") The court must grant the bankruptcy court the widest latitude possible in its use of discretion. The court should not upset a standard practice of bankruptcy courts in using their wide discretion in reopening cases to make all necessary findings of facts and law. Otherwise, such a disturbance will result in a waste of judicial resources if causes of action are ultimately held to be judicially estopped. Accordingly, the court should not upset the bankruptcy court's determination in this case.

While Inserra may cite other cases in their appeal in which courts have felt otherwise, that is, they have determined that is not appropriate for them to rule on the issue of judicial estoppel, this appears to merely represent a split in opinion, not an abuse of discretion. Clearly, as detailed in the cases above, many reasonable judges have felt that the issue is within their authority. Although the district court may have used their discretion and ruled differently on the issue if first presented to them, it cannot be said that the bankruptcy court has committed a clear error in the law or has otherwise abused their discretion based on their reasonable interpretation of their role when deciding whether or not to reopen cases.

**B.  The bankruptcy court was well within its authority by ruling on the good faith of the debtor with regards to the reopening of the case.**

Rulings on the good faith of the debtors are part and parcel of numerous decisions the bankruptcy judges make daily, even on matters that may seem otherwise mundane. Good faith is an important element that a court looks to in authorizing the reopening of a bankruptcy case to include a lawsuit of the debtor. See Burnes v. Pemco Aeroplex, Inc., 291 F. 3d 1282, 1289 (11th

8

Cir. 2002); In Re Koch, 229 BR. 78, 87-88 (Bankr. E.D.N.Y. 1999); In Re Maloy, 195 B.R. 517, 520 (Bankr. M.D. Ga.. 1996); In Re Narcisse, Case No. 96-21345 (Bankr. E.D.N.Y. 2013). Motions to reopen implicate the fundamental bankruptcy principles of a debtor's duty of full and honest disclosure. This type of decision necessarily invokes the exercise of a bankruptcy court's equitable powers, which are dependant upon the facts and circumstances of each case. As the determination is based on equitable factors, a debtor's good faith may be a significant determination. In Re Arana, 456 B.R. 161, 168, 172 (Bankr. E.D.N.Y. 2011). As such, determinations of the debtor's good faith is part and parcel of the reopening process.

The decision to reopen a case involves far more than the narrow administrative inquiry that Inserra purports. Instead, a bankruptcy judge, far from a mechanistic referee, is a guardian of the bankruptcy process, and should take into consideration the equitable factors present in each case. Removing the inquiry of good faith from consideration would render the rules on candid disclosure toothless, and is not a position the court should adopt. In Re McMellon, 448 B.R. 887 (S.D. W. Va. 2011). Policy considerations should militate against adopting a rule that good faith is irrelevant to the reopening of a bankruptcy case to administer undisclosed assets. In Re Lowery, 398 B.R. 512 (Bankr. E.D.N.Y. 2008).

Allowing the judge to make considerations on the good faith is also consistent with the broad language of section 350(b). The statutes permissive language provides the court with broad discretion to determine whether a debtor filed a motion to reopen in good faith. Farley at 237. Courts have considered the debtor's good faith when deciding to allow a debtor to reopen a case for the purpose of adding a cause of action that would otherwise be subject to a judicial estoppel defense. In Re Tarrer, 273 B.R. 724, 734. (Bankr. N.D. 2002).

9

Similar to the ruling on judicial estoppel, the bankruptcy court has wide latitude to consider a variety of factors in its broad discretion to reopen a case. Even Inserra acknowledges in footnote 1 on page 9 of their appeal that "some courts examine whether a debtor acted in bad faith when deciding to reopen a bankruptcy to administer a previously undisclosed asset." Inserra urges the court to follow the Bankruptcy Court for the District of New Jersey's ruling in In Re Phillips, No. 09-28759, 2012 WL 1232008 (Bankr. D.N.J. Apr. 12, 2002) where the court in its discretion determined that bad faith is irrelevant to the court analysis.[3] However, this ruling is not precedential nor binding on the other bankruptcy judges in New Jersey and merely represents the opinion of one judge. As it is not controlling, there is no clear error of law in taking a contrary ruling such as the judge did in the instant case. So the court can see that Inserra's position that good faith is irrelevant merely represents a split in opinion among the courts as to the factors to consider. As many reasonable judges take the position that the good faith of the debtor is crucial in the analysis of reopening cases, and it is supported by the permissive nature of the statute and overriding guardianship role of the bankruptcy judge, it cannot be said that the bankruptcy court here abused their discretion.

**II.** **The bankruptcy court did not abuse its discretion in reopening the debtor's case as 1329(c) and 1329(a) are not the sole methods by which payments through a Chapter 13 trustee to creditors can be effectuated in a reopened Chapter 13 case.**

Inserra's argument relies on its belief that 1329(c) and and 1329(a) operate to prevent

---

[3]Interestingly enough, and to be discussed later, the language as quoted by Inserra in Phillips states that the need to administer assets for the benefit of the debtor is the overriding consideration. This overriding concern for the benefit of creditors was crucial to the bankruptcy court's ruling in reopening the instant case. This language works as a detriment to Inserra's position that the court improperly reopened the case to administer assets.

10

any distribution to creditors after plan payments are complete and after the 60th month from when the case has been filed. However, both of this arguments are mooted by the operation of 350(b) which provides " a case may be reopened in the court in which the case was closed to administer assets, to accord relief to the debtor, or for other cause." This statute is broad and permissive and serves as an independent basis to provide for the payment to creditors beyond that spelled out in 1329. Broad deference should be given to the clear and unequivocal language of this section.

Regardless of what the actual purpose of the debtor was in reopening the case, there is indeed a benefit to creditors in reopening and the court has already ruled that the debtor  has proceeded in good faith since the filing of the case.

### A. The time limits of 1329(c) do not apply to a distribution of assets pursuant to 350(b).

Inserra's position relies on its belief that all payments to creditors in a Chapter 13 necessarily have to be made pursuant to the terms of an active confirmed plan, or modified confirmed plan which 1329 spells out. While most payments are made this way, 350(b) provides a separate basis for payments to creditors.  350(b) acts as an remedial measure to allow that which should have been done during the pendency of the case to in fact be done.  Of the various remedial measures debtors use to reopen, i.e. list creditors, get a determination of dischargeabililty, etc., only one specific remedial measure is explicitly spelled out in the statute: administration of assets.  The statute is broad and by its language without limit. In addition, Federal Rule of Bankruptcy Procedure 5010 provides that upon the reopening of a chapter 13, a trustee can be appointed if necessary to protect the interest of creditors. It is implicit that payments to creditors is included within "protecting creditors" as that is the whole purpose of the

11

bankruptcy as far as creditors are concerned. Neither 350(b) or 5010 limits the time to make a motion to reopen. In Re Arana at 174. One familiar with the intricacies and indecipherability of large swaths of the Bankruptcy Code knows that many sections are extremely convoluted and contain cross references to various other provisions. However, the plain language of 350(b) in this regard could not be clearer in that one may reopen a case to administer assets. No time limits are made. No references to 1329 are made. Based on the aforementioned extent of convoluted provisions in the Bankruptcy Code , the drafters of the Bankruptcy Code were well aware of how to place conditions on which assets could be administered in a reopened Chapter 13 case. Quite notably, 350(b) is beautifully simple in that none are provided.

The plain language rule is one of the most well known axioms of statutory interpretation. Where the language is plain and admits no more than one meaning the duty of interpretation does not arise. Calminetti v. United States, 242 U.S. 470, 485 (1917). Where the language of an enactment is clear and construction according to its terms does not lead to absurd or impractical consequences, the words employed are to be taken as the final expression of the meaning intended. Immigration and Naturalization Serv v. Phinpathya, 454 U.S. 183, 189 (1984). Since it should be generally assumed that Congress expresses its purposes through the ordinary meaning of the words it uses, it is often stated that, absent a clearly expressed legislative intention to the contrary, statutory language must ordinarily be regarded as conclusive. Escondido Mut. Water Co., v. La Jolla Band of Mission Indians, 466 U.S. 765, 772 (1984).

While application of the plain language rule leaves the analysis of legislative intent moot, I think it is indeed relevant to note how, the legislative intent wholeheartedly supports the interpretation taken by the bankruptcy court in the instant matter. In 2005 Congress as part of

12

BAPCPA made sweeping changes to the Bankruptcy Code and created the applicable commitment period [see section 1322(d)(5)(C)] as a method to protect unsecured creditors by requiring debtors to make a good faith effort to repay what the debtor can afford over a meaningful period. Evan J. Zucker. The Applicable Commitment Period: A Debtor's Commitment To A Fixed Length Plan. ABI Law Review, Vol. 15: 287. 2007. The applicable commitment period determines the length of chapter 13 plans and is directly tied to the time limits in 1329. Therefore, the applicable commitment period is a sword for the creditors to capture all income and assets acquired over the specified time period, not a sword to prevent such payments to creditors. It would be the antithesis of the spirit of BAPCPA to use the applicable commitment period limits to prevent further payments to creditors from any assets obtained during that period. With a most recent emphasis on providing the highest payments to creditors as possible, the entire Bankruptcy Code has to be understood in the context of effectuating this purpose. The approach proffered by Inserra would actively work to prevent payments to creditors and allow the sprit of BAPCPA to be disregarded.

Providing a payment to creditors is the overriding concern when it comes to the question of whether to reopen under 350(b) as by its plain language it was apparently the first concern of Congress. Indeed, as cited in Inserra'a appeal, the Bankruptcy Court for the District of New Jersey held that the overriding factor a court should consider in reopening a case is the need to administer assets for the benefit of creditors. In Re Phillips at *4. While a motion to reopen is left with the sound discretion of the bankruptcy court, the court has a duty to reopen whenever prima facie proof is made that it has not been fully administered. In fact it is an abuse of discretion to deny a motion to reopen where assets of such probability, administrability, and

13

substance exist as to make it unreasonable not to deal with them. In Re Lopez, 283 B.R. 22, 27 (9TH Cir. B.A.P.. 2002).  See also In Re Upshur, 317 B.R. 446, 450  (Bankr. N.D. Ga. 2004) ("The most important consideration is the benefit to creditors."); In Re Lewis, 273 B.R. 739, 747 (Bankr. N.D. Ga. 2001) ("The persuasive factor for the Court to weigh in deciding to reopen the case is.....the effect a reopening would have on the creditors of the debtor's estate."). Creditors in the bankruptcy should not be deprived of their ability to be paid proceeds of the asset regardless of the debtor's purpose  in reopening. 3 Collier on Bankruptcy 350.03[1] at 350-7 (Alan N. Resnick & Henry J. Sommer eds., 16th ed 2010).

Given the plain language of the 350(b) along with the clear congressional mandate to achieve the highest repayment back to creditors as possible, it cannot be said that the bankruptcy court abused its discretion in reopening the case to administer the asset.  It appears that the debtor's personal injury action is worth significant value and once a result is achieved in favor of the debtor, there will be assets available that can pay a significant dividend to unsecured creditors.  The funds to result from the asset are of such probability, administrability, and substance to make it unreasonable  not to deal with them.  The funds in question are no different than the thousands of personal injury actions that result in payments to creditors through Chapter 13 cases nationwide every year and one in which the Chapter 13 trustee in the instant matter is well capable of administering for the estate.

Nor will payments to creditors through this reopened case result in any absurd or impractical results to make adherence to the plain language of 350(b) unwarranted.  The end result will merely be that, once the action settles, funds will be paid to the chapter 13 trustee, who will then disburse the funds to creditors.  This is no different a process than if a timely modified

14

plan filed by the debtor had been confirmed.  It is the exact same mundane administrative process and requires no special conditions or events beyond that which the trustee is accustomed to regularly doing.  It cannot be said that the judge's adherence to the plain language of 350(b) which results in no absurd results whatsoever, and it directly in line with the well known congressional intent was an abuse of discretion.

What would, in fact, be an absurd result, would be the position urged by Inserra.   When an action is not disclosed by the debtor, it remains property of the bankruptcy estate even if the case is closed.  Unless it is administered or abandoned by the trustee, it remains property of the bankruptcy estate forever. In Re Arana at 170.  What is absurd and impractical is to conclude that an asset which is part of the bankruptcy estate is forever  in a state of limbo, forever incapable of being administered. Indeed, this is why 5010 specifically allows a Chapter 13 trustee to be appointed as it was known that someone would need to administer assets in reopened cases. When deciding to reopen a case under 350(b), courts ought to emphasize substance over technical considerations.  Id at 172.  Given the plain language of the 350(b), clear congressional intent, and absurd results of allowing an asset to remain bankruptcy estate property in perpetuity without any means of being administered, it is absurd and impractical to take such a hyper-technical position urged by Inserra. At the very minimum, one cannot find a abuse of discretion in taking the approach taken by the bankruptcy court in this case.  While this broad and remedial construction of 350(b)  may at first glance be seemingly at odds with the language of 1329, such arguable contradictions are common throughout the bankruptcy code. For example, see Footnote 1 above regarding the interplay of 1306(a)(1) and 1327(b).  Such seeming contractions should be resolved in the manner that most effectuates the whole purpose of the statutory scheme.  The

15

approach taken by the bankruptcy court does just that and provided a rather straightforward and equitable solution, and is of course wholly consistent with the plain language of 350(b). No abuse of direction in such an instance exists. To the contrary, as the court in Lopez said, to take a view otherwise and disallow the asset to be administered would in itself be an abuse of discretion.

There is also no need for a modified plan as the method for distribution by the trustee is already provided in the terms of the debtor's confirmed plan. Payments will be made pro rata to unsecured creditors. As no minimum or maximum amount is specified to be paid to unsecured creditors, they will all receive an equal portion until they are paid in full. No change in these terms is needed and therefore no modified plan is necessary. Plans in this regard are already set up and confirmed with the understanding that unsecured creditors will be paid up to 100% of their claims if more funds should come into the estate. If payments to unsecured creditors were being reduced and they were adversely effected, this would likely require a modified plan. However, if debtors somehow receive more money than originally anticipated, and consent to that money being paid through their Chapter 13 plan to unsecured creditors, that does not require a modification. The trustee can distribute those funds pro rata up to 100%. The fact that a plan cannot be modified, does not prohibit the trustee from being able to administer the asset. HomeEq Serv. Corp. V. Hauf, 2007 WL 196857 at *4  (M.D. Ga. Jan 23, 2007).

In fact, this is the regular practice in the Bankruptcy Court for the District of New Jersey. Cases reopened for this purpose to administer assets are routinely granted without objection by the court. Such examples of particular cases can be provided upon request. Similarly, other courts throughout the country follow this practice as well. In one case in particular, In Re

16

Tarrer, *supra,* the court, in identical facts specifically allowed a Chapter 13 case to be reopened

after five years to administer a previously undisclosed cause of action. The court noted that their

proper role in such a case is to first and foremost protect the interest of the bankruptcy

participants (which 3rd party state court defendants are not), and primarily those interests of

creditors. *Id* at 735. See also In Re James, *supra* at 595. In that case, a motion to reopen was

filed after five years to disclose a cause of action. The court opened the case noting that the

controlling factor is whether creditors would benefit from the reopening[4].

Since the bankruptcy court followed the plain language of 350(b) in a manner totally

consistent with the congressional intent and in a manner that avoids the absurd result of estate

property forever remaining in limbo with no possibility of administration, it cannot be said that

the order to reopen was an abuse of direction.

## B. The fact that plan payments are completed does not prohibit administration of assets pursuant to 350(b).

The full extent of reasoning with section A above applies equally as here as well. The

fact that the debtor competed his plan payments long ago does not prohibit assets nonetheless

from being distributed upon the reopening of the case. No plan modification is occurring here.

Assets are being administered independently of the plan and pursuant to 350(b), yet in the same

pro rata manner. The bankruptcy court followed the plain language of 350(b) in reopening the

case to administer assets. This completely adheres to the congressional intent to make maximum

payments to unsecured creditors. The benefit to creditors is the most overriding factor a court

---

[4]Interestingly, the debtor had already paid creditors 100% during the course of the case but the court still allowed reopening to accord relief to the debtor specifically to prevent the imposition of judicial estoppel.

17

weighs in deciding whether to reopen a case.  To not allow administration of estate property after completion of plan creates an absurd result in unadministrable assets remaining in limbo forever. There is no time limit imposed under motions to reopen.

One additional case on point with relevant facts that the court can note is In Re Roman, 257 Ga. App. 774, 572 S.E. 2d 338 (Ga. App. 2002) where the court allowed the debtor to amend his schedules to include a personal injury action in a Chapter 13 case after completion of plan payments and discharge, but before closing of the case.  The court noted that any recovery from the action the debtor received could inure to the benefit of the bankruptcy estate, most notably, the creditors.  So the court held that assets can be distributed after plan completion and without the need for a modified plan.  Again, this is entirely consistent with the purpose of BAPCPA in allowing a maximum payments to unsecured creditors.

Furthermore, the position of Inserra here would render a large portion of 5010  void.  A case can only be reopened under 350(b) once it has been completely administered, as opposed to having been  dismissed. See In Re King, 214 B.R. 334 (Bankr. W.D. Tenn. 1997); In Re Income Property Builders, Inc, 699 F. 2d. 963 (9th Cir. 1982).  In order for a case to be completely administered, that would necessarily entail the completion of plan payments. However, 5010 provides that a Chapter 13  trustee, despite the required completion of plan payments, can nonetheless still be appointed to administer assets.  Inserra's position that after plan completion the trustee lacks authority to make payments would render that whole part of 5010 meaningless. The rule to avoid surplusage provides that each word is meaningful and useful and an interpretation that would render a word or phrase redundant or meaningless should be rejected. William N. Eskridge, Jr.; Philip P. Frickey; Elizabeth Garrett, Cases and Materials on

Legislation: Statutes and the Creation of Public Policy (3rd ed. 2001).

While there may be a split in cases where different judges have used their discretion differently on this issue, the plain language application of the statute in a manner consistent with congressional intent that avoids absurd results cannot be said to be an abuse of discretion.

### C. The trustee is allowed to administer assets pursuant to 350(b), 105(a), and 5010 and therefore the inability to modify the plan payments does not prohibit reopening.

As administration of the undisclosed asset here is being made pursuant to 350(b), the inability to modify plan payments is irrelevant to the analysis. 5010 provides that upon the reopening of a chapter 13, a trustee can be appointed if necessary to protect the interest of creditors. Section 105(a) provides that the court may issue any order, process, or judgement that is necessary or appropriate to carry out provisions of this title. Section 105 is an omnibus provision phrased in such general terms as to be the basis for such a broad exercise of power in the administration of the bankruptcy case. The basic purpose of 105 is to assure the bankruptcy courts power to take whatever action is appropriate or necessary in aid of the exercise of its jurisdiction. 2 L. King, Collier on Bankruptcy 105.01 at 105(3) 1996. Certain goals of the Bankruptcy Code are implied but not stated in the statutory language and 105 grants the bankruptcy court authority to fill in gaps in the statutory language. 2 Williams M. Collier, Collier on Bankruptcy 105.01(3) (Lawrence P. King Ed. 1991). See also In Re Fleming, 424 B.R. 795, 805 (Bank. W.D. Mich , 2010), In Re LFS Financial, 417 B.R. 419, 448 (Bankr. S.D. Tex., 2009). Therefore, the judge has authority under 5010 to appoint the Chapter 13 trustee and pursuant to 105(a) to allow the trustee to distribute assets independent of the filing of a modified chapter 13 plan.   In fact, the ability of the trustee to distribute assets pursuant to 5010 alone

19

appears to be evident but 105 further bolsters this position.

The plain language of 350(b) and 5010 are explicit in its allowance of the reopening of the case with no time limits to administer assets and appoint a chapter 13 trustee. This is consistent with congressional intent and would produce absurd results otherwise. Therefor, there is an implied authority for the trustee to administer such assets. Furthermore, the language regarding the Chapter 13 Trustee in 5010 would be meaningless if he were unable to administer assets. 105 fills in the blanks and provides the appropriate authority for such an administration. Such an approach is also consistent with the proposition that the goal of substance over form take place with regards to decision to reopen cases.

This analysis provides no direct conflict with any section of the code, including 1326(c), the prime authority Inserra relies upon for its proposition that the trustee lacks authority to administer any assets outside that of a confirmed plan. 1326(c) states that "Except as other wise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan." This statute does not restrict the trustee's authority to that of merely making under confirmed plans. Instead, it restricts who makes payments under plans. Unless otherwise provided, the debtor, debtor's attorney, or any other 3rd party disbursing agent are not the ones to administer the plan payments. Rather it is the trustee's role to do so. The focus here is on who distributes payments under the plan, not a restriction of the trustee's overall administration authority. As it would be absurd to not follow the plain language of 350(b) and allow the trustee to administer assets in reopened chapter 13 pursuant to his appointment under 5010, this is the correct interpretation of 1326(c).

As stated in response to all of Inserra'a other arguments, there is split in opinion on this

20

issue with other courts asserting the position Inserra is urging the court to take here.  However, the approach the judge has taken in this case is the correct one and consistent with the plain language of 350(b) and 5010,  furthers the congressional objective of effectuating a maximum repayments to unsecured creditors, and avoids the absurd result of unadministrable assets remaining in limbo for perpetuity.  While Inserra and other court's in their broad discretion under 350(b) may reach alternative results, it cannot be said that the judge here took an unreasonable position, failed to follow any controlling law, or other wise abused their discretion.

**III.**    **Inserra lacked standing to object to the debtor's Motion to Reopen His Chapter 13 Case.**

Alternatively, if the court takes the position with regards to Inserra's argument **I**, that the court exceeded its authority by ruling on the issues of judicial estoppel and good faith, then that would also mean Inserra lacked standing to press their objection and the court exceeded its authority by allowing their objection to be heard.

If reopening the case is in actuality merely a ministerial act with no legal significance to the bankruptcy or the state court action, than Inserra was not subject to an injury in fact nor did they hold a legally protected interest that the debtor seeks to affect through the course of the bankruptcy and thus were not a party in interest." In Re Phillips, at *3.    The mere act of reopening would not afford any party substantive relief. In Re D'Antignac, 05-10620 (Bankr. Ct. SD Georgia 2013).  Since bankruptcy estates are administered for the benefit of creditors and the debtor and not for entities who may owe money to the bankruptcy estate, state court defendants have no right to complain about how the estate is administered..   In re Riazuddin, 363 B.R. 177, 182-183 (10th Cir. B.A.P 2007).

21

If the court is to take Inserra's position on this issue that the bankruptcy court had no authority to order anything beyond just an administrative reopening of the case, then the court must necessarily decide that Inserra lacked standing to press their objection as they would have suffered no injury in fact as no legal determinations should have been made. Under this scenario, there is a fatal jurisdictional issue, and the court abused their discretion by allowing Inserra to press their objection.

## CONCLUSION

The bankruptcy court has broad equitable discretion in deciding to reopen a case and does so under the review of all facts and circumstances. Inherent in such an analysis is a review of the good faith or lack thereof of the parties seeking relief. To deprive the court of such an ability to analyze the debtors good faith would neuter the court and reduce the court to a role inconsistent with a court of equity. As the bankruptcy court has jurisdiction to hear any matters that effect the amount of assets available for distribution to creditors, the court had the authority to conduct such an analysis of the facts in the instant case to find that the debtor thus far proceeded in good faith and should not be judicially estopped from pursuing his state court claim. Such an analysis also prevented a waste of judicial resources in reopening a case specifically to administer an asset only to have it subsequently barred by judicial estoppel.

The plain language approach to 350(b) explicitly authorizes cases to be reopened to administer assets without the need for the filing of a modified plan.. The statute is broad and unambiguous and has no time restrictions. Upon such reopening, 5010 allow the court to appoint a chapter 13 trustee. The clear congressional objective in bankruptcy is to make maximum repayments to unsecured creditors. The narrow approach urged by Inserra would

22

create absurd results as it would leave estate assets in a perpetual state of unadminstrability and render a large portion of 5010 void.  105(a) fills in the blanks the drafters of the Bankruptcy Code left by granting the court the official ability to enact the order to reopen and gives the trustee such powers.

To take Inserra's  position that the court overstepped its boundaries in its order necessarily also removes them of standing as they face no injury in fact in that scenario.

For the foregoing reasons, the debtor respectfully requests that Inserra's appeal be denied.

Respectfully submitted,

/s/ Kevin de Lyon, Esq.

Raymond and Raymond, Esq.
7 Glenwood Ave, St. 408
East Orange, NJ 07017
(973)-675-5622
(408-519-6711 (Fax)

Attorneys for Appellee
Irfan Shah

23